# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO GREEN,<br><br>Plaintiff,<br><br>v.<br><br>THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No. 1:23-cv-01108-JLT-SAB<br><br>ORDER SCREENING COMPLAINT AND GRANTING LEAVE TO FILE FIRST AMENDED COMPLAINT OR FILE INTENT TO PROCEED ON CLAIMS FOUND COGNIZABLE<br><br>(ECF Nos. 1, 2, 12)<br><br>**THIRTY DAY DEADLINE** |

## I.

## INTRODUCTION

On July 25, 2023, Plaintiff, a state prisoner represented by counsel, filed this action and paid the filing fee. (ECF Nos. 1, 2.)[1] On October 13, 2023, Defendants State of California and the California Department of Corrections and Rehabilitation filed a request for screening of the complaint and a thirty (30) day extension of time for Defendants to file a responsive pleading following the issuance of the screening order. (ECF No. 10.) On November 2, 2023, the Court granted the request for screening, but denied the request for an extension of time to file a responsive pleading as premature. (ECF No. 12.)

---

[1] Plaintiff filed the complaint twice. (ECF No. 2.) The Court's review of the filings appears to show that the first filing did not contain the signature of counsel. (ECF No. 1 at 42.) The second filing contains the signature of counsel. (ECF No. 2 at 42.) The Court presumes that the second filing is the correct and operative complaint.

**II.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.  Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678.  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.' "  Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the

reasonable conclusion that the defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.

### III.

### COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff names the following Defendants: (1) the California Department Of Corrections and Rehabilitation ("CDCR"); (2) the State of California (the "State"); (3) Warden Steve Smith ("Smith"), in his individual and official capacity; (4) Lieutenant William M. Whitley, Badge Number 70558 ("Whitley"), in his individual and official capacity; (5) Sergeant William A. Velasquez, Badge Number 84404 ("Velasquez "), in his individual and official capacity;[2] (6) Correctional Officer Shane McHoul, Badge Number 91612 ("McHoul"), in his individual and official capacity; (7) Correctional Officer Daniel Contreras, Badge Number 88453 ("Contreras"), in his individual and official capacity; (8) Correctional Officer Rodrigues, Badge Number 86265 ("Rodrigues"), in his individual and official capacity; (9) Correctional Officer Amanda Duncan, Badge Number 62599 ("Duncan"), in her individual and official capacity; and Does 1-50. (Compl. at 1.)

Plaintiff brings the following claims: (1) 8th Amendment – Excessive Force (42 U.S.C. §1983); (2) 8th Amendment – Failure to Intervene (42 U.S.C. §1983); (3) 8th Amendment – Failure to Provide Reasonable Medical Care (42 U.S.C. §1983); (4) Monell Liability – Ratification (42 U.S.C. §1983); (5) Supervisory Liability – Personal Involvement (42 U.S.C. §1983); (6) Battery; (7) Assault; (8) Negligence; and (9) Intentional Infliction of Emotional Distress. (Id.)

At all relevant times, Plaintiff was a twenty-three-year-old citizen of the United States of America, a resident of the County of Tuolumne, California, and in the custody and care of the Defendants as a ward of the state. (Compl. ¶ 3.) In sum, Plaintiff alleges that on April 1, 2022,

---

[2] Plaintiff refers to Whitley and Velasquez collectively as the "Supervising Officers." Plaintiff refers to McHoul, Contreras, Rodrigues, and Duncan, collectively as the "Correctional Officers."

1  he was subjected to an unwarranted and unlawful brutal and malicious attack at the hands of

2  CDCR supervising and correctional officers, while he was handcuffed with his hands behind his

3  back and shackled feet at the Sierra Conservation Center state prison in the City of Jamestown,

4  County of Tuolumne, California ("SCC"); and that Defendants failed to provide subsequent

5  reasonable medical care for more than three hours despite viewing Plaintiff's disfigured face

6  caused by a broken nose, facial and head trauma, the significant pool of blood, and hearing

7  constant complaints of severe pain and distress.  (Compl. ¶ 2.)

8         On April 1, 2022, at or about 1:20 p.m., McHoul handcuffed Plaintiff's hands behind his

9  back and walked him back to his cell from a Lieutenant's office after an interview, in full control

10 of Plaintiff.  (Compl. ¶¶ 27, 28.)  At some point during the escort, McHoul suddenly and without

11 any provocation, verbally commanded Plaintiff to stop walking.  (Compl. ¶ 30.)  Plaintiff

12 complied by stopping, asked McHoul about the reason for the sudden stop, and McHoul became

13 irate.  (Compl. ¶¶ 31, 32.)  McHoul began yelling loudly at Plaintiff and Plaintiff calmly

14 questioned McHoul about McHoul's unwarranted conduct.  (Compl. ¶ 33.)  In response, McHoul

15 spun Plaintiff's body around to face him, and Plaintiff, visibly confused, continued to calmly

16 question McHoul, but this time he inquired about the mistreatment towards him, not just the stop.

17 (Compl. ¶¶ 34, 35.)

18        McHoul then, with his left hand, grabbed the Plaintiff by the waist and repeatedly closed

19 fist punched Plaintiff in the face with his right hand, and Plaintiff's nose immediately began to

20 bleed.  (Compl. ¶ 36.)  During McHoul's punching, Rodrigues approached and grabbed Plaintiff

21 on one side and began to also take control of Plaintiff's body – keeping him upright.  (Compl. ¶

22 37.)  Plaintiff remained defenseless with his hands handcuffed behind his back in the full control

23 of McHoul and Rodrigues, and Plaintiff immediately yelled to anyone that would listen and

24 announced that he had been punched by an officer.  (Compl. ¶¶ 38, 39.)  In response, McHoul

25 punched Plaintiff again in the face to silence the Plaintiff's detailing of the unlawful and

26 excessive force he used, and Plaintiff's nose began to bleed more and his nose looked disfigured.

27 (Compl. ¶ 40.)  McHoul then wrapped his hands around Plaintiff, lifted him off the ground, and,

28 together with Rodrigues, body slammed Plaintiff to the ground, with Plaintiff still handcuffed

and unable to brace his contact to the ground.  (Compl. ¶¶ 41, 42.)  Now on the ground and in McHoul and Rodrigues' control, McHoul again punched Plaintiff in the face a few more times. (Compl. ¶ 43.)

Velasquez, Contreras and Duncan arrived and engaged in the beating and restraint of Plaintiff.  (Compl. ¶ 44.)  Rodrigues then struck Plaintiff in the face as Plaintiff remained beaten and defenseless on the ground.  (Compl. ¶ 45.)  Plaintiff yelled out in pain, and Velasquez, Contreras, Rodrigues and Duncan then forcefully held a non-resisting and dazed Plaintiff down while McHoul administered additional punches to Plaintiff's already bloodied face.  (Compl. ¶¶ 46, 47.)  Rodrigues and Contreras then both individually closed fist punched Plaintiff multiple times, and Plaintiff continued to cry out in pain after each punch to his face and as the pool of his blood grew around his head on the ground.  (Compl. ¶¶ 48, 49.)

Velasquez left to retrieve leg shackles and upon his return, gave them to Duncan and ordered Duncan to shackle Plaintiff.  (Compl. ¶ 50.)  Duncan then shackled Plaintiff's feet in leg restraints – further restraining Plaintiff motionless while in excruciating pain.  (Compl. ¶ 51.) With no means for Plaintiff to control his person, McHoul and Contreras knelt next to Plaintiff and smashed Plaintiff's body (including his face) further and harder into the ground as they both used their body weight and hands to force Plaintiff downward as Plaintiff cried for help and yelled out in extreme pain on his stomach.  (Compl. ¶ 52.)

Plaintiff alleges that by this time, Plaintiff was visibly wounded to all of the correctional and supervising officers that were present and to anyone that looked at him because of the amount of loss of blood that poured out around his head and the visible impact of the injury to his face.  (Compl. ¶ 53.)  The immediate injury to Plaintiff's nose and the position of his head as he was being held down by McHoul, Velasquez, Contreras, Rodrigues and Duncan, restricted Plaintiff's ability to breathe through his nasal pathway and he was forced to breathe through his mouth for air.  (Compl. ¶ 54.)

The present supervising and correctional officers then intentionally mischaracterized Plaintiff's actions as "spitting" because they wanted to further institute unnecessary and unwarranted "control tactics" by placing a spit hood over his head at a time along with prolonged

1    physical restraints when Plaintiff was simply heavily breathing due to the pain and suffering he

2    endured.  (Compl. ¶ 55.)  Plaintiff laid in his pool of blood, for approximately fifteen (15) to

3    twenty (20) minutes without any offer of medical assistance/care or being administered any

4    medical care by any of these aforementioned supervising or correctional officers, and instead,

5    McHoul, Velasquez, Contreras, and Rodrigues taunted and mocked saying: "Green, why are you

6    crying? You wanted this."  (Compl. ¶ 56.)

7        Whitley approached the scene at the time when Plaintiff was pinned to the ground and the

8    correctional officers continued to punch him in the face – seeing the onslaught of punches

9    Plaintiff endured.  (Compl. ¶ 57.)  Although Whitley had the means and ability to stop the

10   barrage of punches (as a higher ranking officer and by merely ordering his subordinates to stop,

11   get off, or the like), he failed to take any action to stop the correctional officers from

12   continuously punching the handcuffed, shackled and completely defenseless Plaintiff in the face.

13   (Compl. ¶ 58.)  Instead, Whitley joined in taunting and mocking Plaintiff when he asked Plaintiff

14   if he warranted being punched; and did not offer any medical assistance during the 15-20 minute

15   span above.  (Compl. ¶ 59.)

16       Although Contreras, Rodrigues, Duncan, Velasquez, Whitley, and McHoul were aware of

17   Plaintiff's immediate injury (from the pool of blood he was forced to lay in for 15-20 minutes,

18   Plaintiff's verbal requests for medical care, Plaintiff's audible cries for help, Plaintiff's visible

19   and audible physical and emotional pain and distress, Plaintiff's visible facial disfigurement that

20   was a clear symptom of a serious injury) and Plaintiff's need for immediate medical attention,

21   not only did they fail to offer and/or provide any medical care, but they instead moved him to a

22   holding cell for over three (3) and a half hours without any medical care or call for medical

23   assistance to a medical staff personnel; and failed to attempt to get Plaintiff to ASU Medical or

24   other out-patient hospital expeditiously or within a reasonable time.  (Compl. ¶¶ 60, 61.)

25   Contreras, Rodrigues, Duncan, Velasquez, and Whitley, instead of taking any action to stop

26   McHoul, each either joined in and contributed to the assault and battery, taunted Plaintiff, and/or

27   complied in form of non-action without an obvious alternative explanation for why they took no

28   action.  (Compl. ¶ 62.)

1    Plaintiff expressed to Whitley that he could not breathe through his nose and that he

2  needed medical attention for his physical and psychological injuries but while Whitley

3  verbalized he understood Plaintiff's request and acknowledged the need but failed to summon,

4  order, or provide him with any medical care.  (Compl. ¶ 63-64.)

5    After the three and a half hours in the holding cell without any medical care, a SCC

6  health care personnel finally was summoned and evaluated Plaintiff.  (Compl. ¶ 65.)  Following

7  that initial medical evaluation that evening on April 1, 2022, Contreras, Rodrigues, Duncan,

8  Velasquez, Whitley, McHoul, and Doe correctional officers unlawfully, against normal policy

9  and procedures, and in an effort to conceal the incident, relocated Plaintiff to an entirely different

10  prison facility before Plaintiff had an opportunity to file a grievance for the incident with SCC

11  and moved him without Plaintiff's request or authorization, unlawfully .  (Compl. ¶¶ 66, 67.)

12    Plaintiff alleges Doe Defendants at MCSP forced Plaintiff to wear bloody clothes and

13  forbade him from showering for two (2) days after the injury/his arrival to the facility.  (Compl. ¶

14  69.)  On April 4, 2022, CDCR acknowledged receipt of Plaintiff's grievance, additionally, SCC,

15  including Smith, received notice of the grievance, incident reports, and were notified of those

16  supervising and correctional officers' misconduct that occurred on April 1, 2022.  (Compl. ¶¶ 70,

17  71.)  Despite the filed grievance, no action was taken to remedy the incident by disciplining any

18  of the involved CDCR employees; and neither defendant State, CDCR or any supervising SCC

19  personnel, including Doe supervising officers, took corrective, remedial, or reprimand action

20  against those supervising and correctional officers involved for their unlawful conduct in the

21  incident.

22    Among other injuries, Plaintiff suffered two black eyes, a broken nose, swelling to the

23  left side of face, abrasions to upper mid back and back of neck, and suffers from insomnia,

24  nightmares, paranoia, migraines and difficulty breathing.  (Compl. ¶ 74.)  Despite SCC,

25  including Contreras, Rodrigues, Duncan, Velasquez, Whitley, McHoul and DOES, being capable

26  of facilitating appropriate accommodations to conduct X-ray and sonogram imaging to identify

27  and/or verify the injury sooner, they did not.  (Compl. ¶ 75.)  Contreras, Rodrigues, Duncan,

28  Velasquez, Whitley, McHoul, and DOES remained unconcerned about Plaintiff's injury and

purposefully waited hours to get him evaluated to make Plaintiff suffer prolonged pain without any pain management accommodations.  (Compl. ¶ 76.)  As a result of Contreras, Rodrigues, Duncan, Velasquez, Whitley, McHoul, and DOES acts and omissions, Plaintiff had multiple nasal surgeries and caused Plaintiff to experience, and continues to endure, unnecessary pain and suffering, including, but not limited to pain and suffering from breathing issues and night tremors; and Plaintiff was forced to seek mental health help (and still requires it) from a therapist to address his mental suffering; and was prescribed medication to help with the psychological impact.  (Compl. ¶¶ 77-78.)

## IV.

## DISCUSSION

### A.    Exhaustion of Administrative Remedies & California Claims Act

Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is a condition precedent to filing a civil rights claim.  Woodford v. Ngo, 548 U.S. 81, 93 (2006); see also McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not.  The actual statute makes exhaustion a precondition to suit." (citations omitted)).  The exhaustion requirement "applies to all inmate suits about prison life."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Further, the nature of the relief sought by the prisoner or the relief offered by the prison's administrative process is of no consequence.  Booth v. Churner, 532 U.S. 731, 741 (2001).  And, because the PLRA's text and intent requires "proper" exhaustion, a prisoner does not satisfy the PLRA's administrative grievance process if he files an untimely or procedurally defective grievance or appeal.  Woodford, 548 U.S. at 93.

A prisoner need not plead or prove exhaustion.  Instead, it is an affirmative defense that must be proved by defendant. Jones v. Bock, 549 U.S. 199, 211 (2007).  A prison's internal grievance process, not the PLRA, determines whether the grievance satisfies the PLRA exhaustion requirement. Id. at 218.  However, courts may dismiss a claim if failure to exhaust is

1   clear on the face of the complaint.  See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).

2          Plaintiff claims he was relocated to an entirely different prison facility before he had an

3   opportunity to file a grievance for the incident at SCC, moving him without request or

4   authorization; Plaintiff was transported to MCSP; and on April 3, 2022, he filed a grievance

5   complaint with MCSP, the only place he could given the transfer.   (Compl. ¶¶ 66-68.)

6   Therefore, it appears Plaintiff exhausted available administrative remedies, and a failure to

7   exhaust is not clear from the face of the complaint.

8          Under California law, in order to state a tort claim against a public entity or public

9   employee under state law, a plaintiff must allege compliance with the presentment of claims

10  requirements of the California Government Claims Act.  See Cal. Gov't Code §§ 945.4, 950.2;

11  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988); Fisher v. Pickens,

12  225 Cal. App. 3d 708, 718, 275 Cal. Rptr. 487 (1990).

13         Plaintiff alleges he timely filed and served his "claim for damages" with the State

14  pursuant to California Government Code § 911.2 on August 09, 2022; and that the State rejected

15  this claim on February 16, 2023.  (Compl. ¶ 23.)  Therefore, the Court finds sufficient allegations

16  that Plaintiff timely filed the complaint within six months of the State's rejection of the claim.

17         **B.      Excessive Force Claim**

18         Plaintiff's first cause of action is for excessive force in violation of the Eighth

19  Amendment, against Defendants: (1) McHoul; (2) Contreras; (3) Rodrigues; (4) Duncan; and (5)

20  Does 1-50.  (Compl. ¶¶ 89-101.)

21         When prison officials use excessive force against prisoners, they violate the inmates'

22  Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298

23  F.3d 898, 903 (9th Cir. 2002).  To establish a claim for the use of excessive force in violation of

24  the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously

25  and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline.

26  Hudson v. McMillian, 503 U.S. 1, 6–7 (1992); Stevenson v. Holland, No.

27  116CV01831AWISKO, 2017 WL 2958731, at *13 (E.D. Cal. July 11, 2017) (in analyzing a

28  claim of excessive force under the Eighth Amendment, "the deliberate indifference standard is

'inappropriate.' " (quoting <u>Hudson</u>, 503 U.S. at 6)).  In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response.  <u>Hudson</u>, 503 U.S. at 7, 9–10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)).

The Court notes that the allegations against Defendant Duncan are somewhat more vague as to the use of punches versus restraint, compared to the other Defendants.  (<u>See</u> Compl. ¶ 44 ("Defendants Velasquez, Contreras and Duncan arrived and engaged in the beating and restraint of Plaintiff.").)  The other Defendants have separate allegations specific to them as to the use of punches.  Nonetheless, the Court finds sufficient allegations concerning participation in the alleged beating and restraint, for purposes of screening.[3]  (Compl. ¶¶ 45-51.)

Accordingly, the Court finds Plaintiff has presented sufficient allegations to state a potentially cognizable excessive force claim against Defendants McHoul, Contreras, Rodrigues, and Duncan.[4]

### C.    Failure to Intervene Claim

Plaintiff's second cause of action is for failure to intervene in violation of the Eighth Amendment, against Defendants (1) McHoul; (2) Contreras; (3) Rodrigues; (4) Duncan; (5) Whitley; (6) Velasquez; and (7) Does 1-50.  (Compl. ¶¶ 102-115.)

"Broadly, correctional officers have an obligation to protect their prisoners from harm at the hands of other prisoners and from the wrongful conduct of other correctional officers." <u>Stevenson</u>, 2017 WL 2958731, at *13 (collecting cases).  Even if officials did not take "any

---

[3] As the Court reiterates at the conclusion of this order, a screening order is without prejudice to Defendants raising any issues in a subsequent motion to dismiss.

[4] As the Court discusses further below as to all causes of action, the Court finds insufficient allegations tied to any Doe Defendants for the Court to find a cognizable claim stated as to any Doe Defendants.  At a minimum, Plaintiff will be required to file a motion for leave to amend to name any Doe Defendants at a later date.

action" against the inmate, "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." <u>Robins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir. 1995); <u>see also</u> <u>Knapps v. City of Oakland</u>, 647 F.Supp.2d 1129, 1163 (N.D. Cal. 2009) ("A reasonable officer could not have reasonably but mistakenly believed that he had no duty to intervene to stop another officer in their immediate presence from inflicting excessive force on a subject when they could have prevented it."). Therefore, [w]hen a correctional officer fails to intercede— despite having a realistic opportunity to do so—'the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows.' " <u>Stevenson</u>, 2017 WL 2958731, at *13 (quoting <u>Hudson</u>, 503 U.S. at 6). Falling under the same standard generally with excessive force under the Eighth Amendment, "the core judicial inquiry" is whether the prison officer either, on one hand, failed to intervene in a good-faith effort to maintain or restore discipline or, on the other hand, maliciously and sadistically failed to intervene to cause harm. <u>Stevenson</u>, 2017 WL 2958731, at *13.

Based on Plaintiff's common allegations summarized above (Compl. ¶¶ 37-59, 62), as well as the additional allegations pertaining to the second cause of action (Compl. ¶¶ 102-115), Plaintiff states a potentially cognizable claim for failure to intervene against Defendants McHoul, Contreras, Rodrigues, Duncan, Whitley, and Velasquez, based on the allegations of being present during the use of excessive force, but failing to take any action to stop the excessive force.[5]

### D.   Claim for Failure to Provide Reasonable Medical Care – Deliberate Indifference to Serious Medical Need

Plaintiff's third cause of action is for failure to provide reasonable medical care in violation of the Eighth Amendment, against Defendants: (1) McHoul; (2) Contreras; (3) Rodrigues; (4) Duncan; (5) Velasquez; (6) Whitley; and (7) Does 1-50. (Compl. ¶¶ 116-127.) While this cause of action is entitled in this manner pertaining to failure to provide reasonable

---

[5]  Given the allegations of the timeline as a whole, Defendant McHoul is essentially alleged to have been the main force user the whole time, and not clear whether a failure to intervene claim makes sense as applied to him. Nonetheless, it appears there are sufficient plausible allegations he was there during other punches executed by, for example Velasquez, to support a failure to intervene claim.

1  medical care, this section of the complaint also alleges Defendants knew that failure to provide

2  timely medical treatment to Plaintiff could result in further significant injury or the unnecessary

3  and wanton infliction of pain, but disregarded that serious medical need.  (Compl. ¶ 121.)  The

4  Court notes that paragraph 122, which does use the term "deliberate indifference," only

5  references Defendants McHoul, Rodrigues, and Contreras.

6      "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an

7  inmate must show 'deliberate indifference to serious medical needs.' " Jett v. Penner, 439 F.3d

8  1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires

9  Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's

10 condition could result in further significant injury or the unnecessary and wanton infliction of

11 pain,' " and (2) that "the defendant's response to the need was deliberately indifferent." Id.

12 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal

13 quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104

14 F.3d 1133 (9th Cir. 1997) (en banc)).

15     Deliberate indifference is established only where the defendant subjectively "knows of

16 and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051,

17 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

18 Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond

19 to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439

20 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably

21 high risk of harm that is either known or so obvious that it should be known") is insufficient to

22 establish an Eighth Amendment violation.  Farmer, 511 U.S. at 836-37 & n.5 (citations omitted).

23     A difference of opinion between an inmate and prison medical personnel—or between

24 medical professionals—regarding appropriate medical diagnosis and treatment is not enough to

25 establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);

26 Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a

27 physician has been negligent in diagnosing or treating a medical condition does not state a valid

28 claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not

1  become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at

2  106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff

3  must show that the course of treatment the doctors chose was medically unacceptable under the

4  circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

5      Based on Plaintiff's common allegations summarized above (Compl. ¶¶ 56-61, 63-65),

6  including the specific allegation that Plaintiff was left for a three and half hour period without

7  any medical care with his injuries (Compl. ¶ 65), as well as the additional allegations specifically

8  delineated as to the third cause of action (Compl. ¶¶ 116-127), the Court finds Plaintiff states a

9  potentially cognizable claim for deliberate indifference to a serious medical need, in violation of

10  the Eighth Amendment, against Defendants: (1) McHoul; (2) Contreras; (3) Rodrigues; (4)

11  Duncan; (5) Velasquez; and (6) Whitley.

12      **E.      Monell Claim for Ratification**

13      Plaintiff's fourth cause of action is for Monell liability – ratification, against Defendants:

14  (1) State of California; (2) CDCR; (3) Smith; (4) Whitley; (5) Velasquez; and (6) Does 1-50.

15  (Compl. ¶ 128-138.)

16      In addition to the general factual allegations summarized above, and allegations

17  contained in the section pertaining to the fourth cause of action stated under the ratification

18  theory (Compl. ¶¶ 128-138), the complaint also has a separate section of Monell factual

19  allegations.  This separate factual section brings allegations that would appear to generally fall

20  under other theories of Monell aside from ratification, despite Plaintiff only expressly stating the

21  actual fourth cause of action is brought under the ratification theory.  (Compare Compl. ¶¶ 128-

22  138), with Compl. ¶¶ 87-88(a)-88(p).)

23      A local government unit may not be held responsible on a § 1983 claim for the acts of its

24  employees under a *respondeat superior* theory of liability.  Monell v. Department of Social

25  Services, 436 U.S. 658, 691 (1978).  Rather, a local government unit may only be held liable if it

26  inflicts the injury complained of through a policy or custom.  Waggy v. Spokane County

27  Washington, 594 F.3d 707, 713 (9th Cir. 2010).  Generally, to establish municipal liability, the

28  plaintiff must show that a constitutional right was violated, the municipality had a policy, that

1  policy was deliberately indifferent to plaintiff's constitutional rights, and the policy was "the
2  moving force" behind the constitutional violation.  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v.
3  Brown, 520 U.S. 397, 400 (1997); Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir.
4  2009); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002).   "The
5  custom or policy must be a 'deliberate choice to follow a course of action . . . made from among
6  various alternatives by the official or officials responsible for establishing final policy with
7  respect to the subject matter in question.' "  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075
8  (9th Cir. 2016) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).

9          Courts generally group Monell claims under three or four theory categories, with some
10  differences in the manner of describing the theories, including in classifying some theories under
11  the umbrella of more general theories.  See, e.g., Brown v. Contra Costa Cty., No. C 12-1923
12  PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) ("A Monell claim for § 1983 liability
13  based on public policy can be stated in one of three ways—(1) when official policies or
14  established customs inflict a constitutional injury; (2) when omissions or failures to act amount
15  to a local government policy of 'deliberate indifference' to constitutional rights; or (3) when a
16  local government official with final policy-making authority ratifies a subordinate's
17  unconstitutional conduct." (quoting Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1249-50
18  (9th Cir. 2010))); Ponce v. City of Fontana, No. EDCV1500074VAPSPX, 2015 WL 13765047,
19  at *3 (C.D. Cal. July 17, 2015) ("Three distinct theories may support a Monell claim: (1)
20  ratification; (2) inadequate training; and (3) unconstitutional custom, practice, or policy." (citing
21  Clouthier, 591 F.3d at 1249-50)); Est. of Kong by & through Kong v. City of San Diego, No. 22-
22  CV-1858-BAS-DDL, 2023 WL 4939370, at *7 (S.D. Cal. Aug. 2, 2023) (analyzing Monell
23  claim under general theories of: (1) formal policy; (2) practice or custom; (3) official policy of
24  inaction; and (4) ratification by a final policymaker);[6] Mondragon v. City of Fremont, No. 18-

25

---

26  [6] Generally guided by the complaint there, the court in Kong analyzed a failure to train, and a failure to investigate
and discipline, generally under the umbrella of official policies of inaction.  2023 WL 4939370, at *7 ("Monell
27  liability attaches not just to official policies of action but also, in certain circumstances, to official polices of inaction
. . . [t]he Complaint touches upon two theories of inaction: (1) Municipal Defendants' purported failure to
28  adequately train SDPD officers and (2) Municipal Defendants' purported failure to investigate officers' excessive use
of force and to discipline offending officers.").

CV-01605-NC, 2020 WL 1156953, at *4 (N.D. Cal. Mar. 10, 2020) ("To state a claim for a municipality's Monell liability under § 1983, a plaintiff must allege that a constitutional right was violated as a result of (1) an express municipal policy; (2) a widespread practice that constitutes a custom or usage; (3) the decision of a person with final policymaking authority; or (4) inadequate training." (citations omitted)); German v. Roberts, No. C15-5237 BHS-DWC, 2017 WL 3407052, at *2 (W.D. Wash. Aug. 9, 2017) (describing that under Monell, a local government can be liable only when implementation of customs or policies inflict constitutional injury, and stating "[s]uch a policy can be proven by a local government's ratification of a constitutional violation." (citing Clouthier, 591 F.3d at 1250)).

In order to establish liability under Monell, the plaintiff must plead facts showing that "the policy is the moving force behind the constitutional violation." Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011); see also City of Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Generally, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker," Tuttle, 471 U.S. at 823-24, and a Monell claim generally requires more than "sporadic" incidents. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents."); see also Marsh v. County of San Diego, 680 F.3d 1148, 1159 (9th Cir. 2012) (An "isolated instance ... is insufficient evidence of a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the County." (internal citations omitted)).

First, before turning to the ratification theory, while Plaintiff included a separate Monell factual allegation section that contains generalized allegations concerning policy, practice, custom, and training, it doesn't appear Plaintiff intended to bring a clearly delineated Monell claim under any theory other than ratification. Accordingly, for purposes of this screening, the Court does not consider Plaintiff to have attempted to bring their Monell claim under any theory

other than ratification, as expressly stated in the fourth cause of action.  (See Compl. at 1, ¶¶ 128-138.)

If Plaintiff *was* attempting to bring the Monell claim under a different theory other than the ratification theory expressly stated in the complaint, the Court finds no cognizable claim because there are insufficient, vague, and boilerplate conclusory factual allegations, that are even more vague and boilerplate when considered in conjunction with the fact Plaintiff expressly delineates the fourth cause of action as being brought under the ratification theory.[7] Accordingly, before the Court considers the allegations expressed under the legal standards that courts apply specifically to the ratification theory, the Court finds Plaintiff has not alleged a cognizable Monell claim under any of the other theories described above in various terms by courts.  See, e.g., Kong, 2023 WL 4939370, at *5–6 (finding insufficient facts under a formal government policy theory because "Plaintiff fails to point to a tangible formal policy, such as an ordinance, regulation, policy statement, or official decision . . . offers a formulaic recitation of the second Monell element—that Municipal Defendants have an official policy—in lieu of any apposite formal policy." (citations omitted)); id. at *6-7 (finding insufficient facts under a practice or custom theory, because "[u]nlike allegations of an express policy, 'liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy[,]' [and] . . . [i]n sum, because Plaintiff fails to identify other similar incidents in which the Municipal Defendants' purported practices and customs manifested themselves in constitutional violations, she is precluded from pursuing a Monell claim under a practices-or-customs theory." (quoting Trevino, 99 F.3d at 918)); Pastora v. Cnty.

---

[7]  Among other generalized allegations in the separate Monell factual section, Plaintiff alleges CDCR and the State are liable because its policies, practices, and/or customs caused Plaintiff's injuries, and/or CDCR and State ratified the unlawful actions.  (Compl. ¶ 88.)  Plaintiff alleges Defendants State and CDCR directed, condoned, and encouraged its officers to use unwarranted and unlawful force; employed and retained officers they knew, or reasonably should have known, had dangerous propensities for abusing their authority by using excessive force and failing to follow written policies; failed to provide adequate training, including specifically as to defenseless inmates to highly vulnerable portions of the body; failed to provide adequate supervision to the use of force by inadequately discipling these officers and other personnel, and maintaining inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct; and ratified the beating.  (Compl. ¶¶ 88(a)-(h).)

of San Bernardino, No. EDCV211410JGBSPX, 2021 WL 8743941, at *4 (C.D. Cal. Dec. 22, 2021) ("Plaintiff's Monell claim is factually deficient, and his boilerplate recitations of the Monell standard cannot survive a motion to dismiss . . . Monell claims that survive a motion to dismiss generally provide allegations that show a pattern over a period of time or multiple incidents of the same kind of behavior alleged here." (citing J.M. by & through Rodriguez v. Cty. of Stanislaus, No. 118CV01034LJOSAB, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018))).

The Courts finds below that Plaintiff has not alleged sufficient facts to support a ratification theory.  While Plaintiff included general boilerplate Monell allegations in the separate factual section, the Court does not consider Plaintiff as intending to bring the Monell claim under such theories other than ratification.  If Plaintiff does choose to file an amended complaint pursuing the claim under a theory other than or in addition to ratification, Plaintiff shall consider the legal standards applicable to each theory.  However, the Court notes that if Plaintiff were to allege sufficient facts for the ratification theory, many courts have held that it is not necessary to then proceed to determine or analyze whether the Monell claim is cognizable under a different theory.  See Quinto-Collins v. City of Antioch, No. 21-CV-06094-VC, 2022 WL 18574, at *2 (N.D. Cal. Jan. 3, 2022) ("Because the plaintiffs have stated a Section 1983 claim against the City by virtue of their ratification theory, it is not necessary to evaluate their failure-to-train theory at this stage [and] [while] courts sometimes assess each theory of Monell liability at the pleading stage and dismiss theories that are not adequately alleged, even after finding that the plaintiff has adequately stated a *Monell* claim under one theory . . . [i]n the context of Monell, the different theories of liability (e.g., ratification, failure to train) are best understood the same way—as different arguments in support of a single claim.");[8] but see

---

[8]  See also Mollica v. Cnty. of Sacramento, No. 2:19-CV-02017-KJM-DB, 2023 WL 3481145, at *10 (E.D. Cal. May 16, 2023) ("Because it denies summary judgment, the court declines to address plaintiff's arguments regarding the other theories of *Monell* liability." (citing Quinto-Collins, 2022 WL 18574, at *2)); Gonzalez v. ProBuild Co., LLC, No. EDCV2200315CJCSHKX, 2022 WL 4596579, at *3 (C.D. Cal. July 7, 2022) ("When, as here, a plaintiff alleges multiple theories in support of a single claim, the claim survives a motion to dismiss when just one of those theories is adequately pled." (citing Quinto-Collins, 2022 WL 18574, at *2)); Paniagua v. Cnty. of Orange, No. SACV2200767CJCDFMX, 2022 WL 19793901, at *2 (C.D. Cal. May 4, 2022) ("[D]espite the fact that Plaintiff broke his Monell claim into three separate causes of action based on three theories of Monell liability, Plaintiff is in actuality raising a single claim supported by three separate theories . . . [t]he Court's job when evaluating a motion

---

1  Thurston v. City of Vallejo, No. 2:19-CV-1902-KJM-CKD, 2021 WL 1839717, at *5-6 (E.D.

2  Cal. May 7, 2021) (finding plaintiff stated a claim under the failure to train or discipline theory,

3  but granting motion to dismiss Monell claim with respect to the ratification theory).

4  Additionally before turning to ratification, the Court finds Plaintiff's Monell claim is

5  improperly brought against the individual Defendants.  If Plaintiff chooses to file an amended

6  complaint, he shall consider whether it is proper to name these parties as to the Monell claim.

7  See Kentucky v. Graham, 473 U.S. 159, 166 (1985) (an "official capacity suit is, in all respects

8  other than name, to be treated as a suit against the entity"); Cooper v. City of Fairfield, No.

9  221CV01538JAMKJN, 2023 WL 1110440, at *3 (E.D. Cal. Jan. 30, 2023) ("The Court finds

10  that Plaintiff's Monell claim fails because Defendants are individuals and Monell liability only

11  applies to local government entities . . . [t]here is no legal authority that supports vicarious

12  liability claims directly against these individual defendants under Monell [and] [t]he Court finds

13  that Defendants are improper defendants for this claim and dismisses this claim with prejudice

14  because further amendment is futile."), appeal dismissed, No. 23-15326, 2023 WL 3831849 (9th

15  Cir. June 1, 2023); Magdaleno v. Cnty. of Riverside, No. EDCV 21-2027 (SHKX), 2022 WL

16  1843977, at *3 (C.D. Cal. Apr. 14, 2022) ("As an initial matter, a claim for municipal liability

17  **cannot** be brought against an individual defendant." (emphasis in original)).[9]  Further, even if

18  _____

19  to dismiss is to decide whether the plaintiff has stated a cause of action under any theory even if some theories might
    be deficiently pled and could not alone support the cause of action." (citing Rouchon v. Cty. of Los Angeles, 2019

20  WL 8755120, at *4 (C.D. Cal. Nov. 26, 2019))); Chaidez v. Alameda Cnty., No. 21-CV-04240-RS, 2023 WL
    6466385, at *7 n.6 (N.D. Cal. Oct. 3, 2023) ("To the extent Chaidez premises his _Monell_ claim on alternative

21  theories (such as ratification), it is not necessary to evaluate those theories at this stage." (citing Quinto-Collins,
    2022 WL 18574, at *2)).

22  [9]  See also Pastora v. Cnty. of San Bernardino, No. EDCV211410JGBSPX, 2021 WL 8743941, at *4 (C.D. Cal.
    Dec. 22, 2021) ("Moreover, because Plaintiff's Monell claim against Individual Defendants is duplicative of his

23  Monell claim against the County, this claim must be dismissed as to Individual Defendants."); Cooper v. Cnty. of
    Los Angeles, No. CV 17-2639-FMO (AGR), 2019 WL 1412121, at *2 (C.D. Cal. Feb. 11, 2019) ("A suit against a

24  county employee in his or her official capacity is the equivalent of a suit against the County itself." (citing Graham,
    473 U.S. t 165-66)); Coulter v. Baca, No. CV136090CBMAGRX, 2014 WL 12589648, at *5 (C.D. Cal. Mar. 28,

25  2014) (granting motion to dismiss and dismissing "the Monell cause of action as to individual Defendants.");
    Helstern v. City of San Diego, No. 13-CV-0321-LAB RBB, 2013 WL 3515963, at *3 (S.D. Cal. July 11, 2013) ("To

26  the extent Helstern wants to assert a § 1983 claim against the County, it can only do so under Monell—Monell
    liability _is_ § 1983 liability for municipalities [meaning] the County really isn't a proper defendant to Helstern's sixth

27  through eleventh claims in the first place [and] that Chief Landsdowne, Assistant Chief Long, and 'all Supervisory
    Doe Defendants in their Official Capacities' aren't proper defendants to Helstern's twelfth claim, because as a

28  Monell claim its target isn't individuals."); Chou v. City of Santa Ana, No. SACV1500941JVSFFMX, 2015 WL
    13917881, at *7 (C.D. Cal. Dec. 14, 2015) ("Municipal liability under Monell does not apply to individuals . . .

these Defendants could be properly named as to the <u>Monell</u> claim, it does not appear that all named Defendants as to this cause of action would be considered final policy makers.  <u>See</u> <u>Magdaleno</u>, 2022 WL 1843977, at *3 ("[B]y definition, <u>Monell</u> ratification claims concern the liability of the municipality itself for its endorsement of its subordinates' behavior [and is] not properly brought against Defendant Thomas because he is alleged to be a subordinate—one of the officers physically present at the scene with Plaintiff—and not a policymaker who endorsed or ratified behavior."); <u>Kong</u>, 2023 WL 4939370, at *9 ("[Plaintiff avers the Individual Defendants were responding SDPD officers directly involved in the alleged constitutional tort at issue . . . [f]or this reason, the Court cannot even begin to assess the other requisite elements of <u>Monell</u> ratification and, therefore, finds this variant of Counts 2 and 3 deficient.").

The Court now turns to consider the allegations as to the legal standards applicable to the ratification theory.  "[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies [and] [i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988).  While sporadic incidents generally are not sufficient to impose <u>Monell</u> liability, "[l]iability based on a ratification theory may be based on a single incident 'causally related to the constitutional deprivation.' "  <u>Segura v. City of La Mesa</u>, 647 F. Supp. 3d 926, 939 (S.D. Cal. 2022) (quoting <u>Trevino</u>, 99 F.3d at 918 n.2).  To state a claim for ratification, a "plaintiff must show that 'an official with final policy-making authority delegated that authority to, or ratified the decision of,

---

[a]ccordingly, to the extent that Plaintiffs assert municipal liability against any individual Defendants under <u>Monell</u> (including Mayor Pulido or Aguilar), the Court dismisses these claims with prejudice."); <u>AG. G. by & through Aquino v. City of Hayward</u>, No. 19-CV-00697-DMR, 2019 WL 2929788, at *5 (N.D. Cal. July 8, 2019) ("Plaintiffs concede that Koller cannot be sued as an individual on a <u>Monell</u> theory of municipal liability."); <u>Smith v. Cnty. of Santa Cruz</u>, No. 13-CV-00595 LHK, 2014 WL 3615492, at *11 (N.D. Cal. July 22, 2014) (noting same and granting motion to dismiss); <u>Vivanco v. California Dep't of Corr. & Rehab.</u>, No. 117CV00434LJOBAM, 2017 WL 4652746, at *5 n.1 (E.D. Cal. Oct. 17, 2017) ("However, a <u>Monell</u> claim may only be brought against a municipality, not an individual . . . [as] <u>Monell</u> does not concern liability of individuals acting under color of state law.' " (quoting <u>Guillory v. Orange County</u>, 731 F.2d 1379, 1382 (9th Cir. 1984); <u>Reason v. City of Richmond</u>, No. 20-CV-01900-WBS-EFB, 2021 WL 107225, at *5 (E.D. Cal. Jan. 12, 2021) ("Plaintiffs attempt to sue Chief Williams and Chief French in their individual capacities under <u>Monell</u>, but a <u>Monell</u> claim may be brought only against a municipality, not an individual.").

1  a subordinate.' " <u>Segura</u>, 647 F. Supp. 3d at 939 (quoting <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th
2  Cir. 2008)).

3  "[A] plaintiff must include factual allegations about actions that policymakers took in
4  connection with their 'approval' of the misconduct that would support an inference that they
5  actually ratified the police officer's alleged misconduct." <u>Nguyen v. Cnty. of Orange</u>, No.
6  822CV01693DOCADS, 2023 WL 4682301, at *3 (C.D. Cal. June 8, 2023) (quoting <u>Mitchell v.</u>
7  <u>County of Contra Costa</u>, 600 F.Supp.3d 1018, 1033 (N.D. Cal. 2022)). "Ratification . . .
8  generally requires more than acquiescence." <u>Sheehan v. City & Cnty. of San Francisco</u>, 743
9  F.3d 1211, 1231 (9th Cir. 2014). "Policymakers must make 'a deliberate choice to endorse the
10  officers' actions.' " <u>Segura</u>, 647 F. Supp. 3d at 939 (quoting <u>Sheehan</u>, 743 F.3d at 1231). "A
11  mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983
12  claim." <u>Mitchell</u>, 600 F. Supp. 3d at 1033 (quoting <u>Lytle v. Carl</u>, 382 F.3d 978, 987 (9th Cir.
13  2004)).

14  In the separate <u>Monell</u> factual section, Plaintiff makes one clear reference to ratification,
15  alleging that "[t]he use of force during this April 1, 2022, beating was ratified by the State,
16  CDCR, and other supervisor personnel on their behalf, when they failed to discipline or retrain
17  Contreras, Rodrigues, Duncan, Velasquez, McHoul, and Does for their conduct." (Compl. ¶
18  88(h).) In the fourth cause of action section, Plaintiff alleges that "[o]n information and belief,
19  STATE, CDCR, WHITLEY, SMITH, and VELASQUEZ are final policymakers, acting under
20  color of law, who have final policy making authority concerning the acts of MCHOUL,
21  CONTRERAS, RODRIGUES, and DUNCAN ratified their acts and the bases for them [sic]."
22  (Compl. ¶ 131.)

23  Plaintiff alleges "[o]n information and belief, the final policy makers knew of and
24  specifically approved of MCHOUL, CONTRERAS, RODRIGUES, DUNCAN, and
25  VELASQUEZ's acts." (Compl. ¶ 132.) Plaintiff alleges [o]n information and belief, a final
26  policymaker has determined (**or will determine**) that the acts of MCHOUL, CONTRERAS,
27  RODRIGUES, DUNCAN, and VELASQUEZ were within the policy." (Compl. ¶ 133
28  (emphasis added).)

In one paragraph with multiple subsections, Plaintiff alleges that "as of April 1, 2022, defendants STATE, CDCR, SMITH, as Warden, WHITLEY, as a lieutenant and responding supervisor, and VELASQUEZ, as sergeant and supervisor, ratified and/or approved of their subordinates' decisions alleged in th[e] Complaint when, on information and belief, they": (a) "Inadequately investigated PLAINTIFF's grievance mentioned above by way of failing to adequately interview witnesses' accounts that would have contradicted the reporting officers' statements"; (b) "Inadequately investigated PLAINTIFF's grievance mentioned above by way of improperly weighting [sic] evidence and statements in the offending supervising and correctional officers' favor when the physical evidence (the injuries and places the injuries PLAINTIFF sustained) contradicts the reporting officers' statements"; (c) "Inadequately investigated PLAINTIFF's grievance mentioned above by way of failing to consider the evidence when the physical evidence demonstrates that PLAINTIFF was not a threat to them or to others at the time when PLAINTIFF was brutally beaten"; (d) "Exonerated those officers despite the contradicting evidence that showed PLAINTIFF was not a threat to them or to others at the time he was beaten"; (e) "The supervising officers' direct involvement in the unlawful actions"; (f) "The supervising officers' permissibility to arbitrarily move PLAINTIFF to another facility to inhibit PLAINTIFF's ability to file a grievance in an effort to cover up the officers' conduct"; (g) "The supervising officers' approved of the reports that the reporting officers' intentionally misrepresented what happened in an effort to cover up their conduct (which in turn leads to at least those officers' to believe or at least receive a message that their behavior that lead to PLAINTIFF's injuries is permissible within the department)"; and (h) "The STATE and CDCR delayed their investigation for more than a year and counting."  (Compl. ¶ 134(a)-(h).)

Although Plaintiff does identify multiple final policy makers, like other courts that have faced similar allegations under ratification theories, the Court finds the allegations of ratification, based on information and belief, and premised on alternative potential final policy makers and alternative or yet to occur potential decisions, are insufficient to state a cognizable claim.  See Thurston, 2021 WL 1839717, at *6 (finding allegations "unclear and conclusory" as plaintiff "lists multiple individuals in attempting to identify a final policymaker . . . [b]ut simply listing a

1    number of high-ranking individuals is not sufficient to allege a specific final policymaker [and]

2    has not clarified which individual, if either, is a final policymaker as a matter of state law . . .

3    [and] [e]ven if Thurston had properly alleged one or more person as a final decision maker, she

4    has not stated a claim under a ratification theory [as] allegations that the policymakers 'ratified'

5    or 'knew and/or reasonably should have known about' the alleged constitutional violations are

6    conclusory."); Segura, 647 F. Supp. 3d at 939 (finding the allegation made "upon information

7    and belief that the County, by its 'actions or inactions, authorized and/or ratified' the use of non-

8    lethal force at the La Mesa demonstration, 'including the force used on Plaintiff[,]' . . . is simply

9    too conclusory to adequately plead ratification," and stating the "court joins numerous other

10   courts in this Circuit that have found similar conclusory allegations to be insufficient to

11   withstand a motion to dismiss." (collecting cases)); Nguyen, 2023 WL 4682301, at *3  (where

12   "FAC alleges that a final policymaker ratified Deputy Leathers's conduct and the bases for it . . .

13   that the final policymaker has determined (or will determine) that the acts of Leathers were

14   'within policy[,]' [and] that 'a final policymaker with the Orange County Sheriff's Department /

15   County of Orange and the Sheriff and his/her Undersheriff and Assistant Sheriffs, has ratified the

16   use of excessive deadly force by their deputy sheriffs, including finding that use of deadly force

17   acceptable[,]" holding the "allegations are conclusory and fail to allege any actions that the

18   unidentified policymaker took in connection with their 'approval' of the misconduct that would

19   support an inference that they actually ratified Leathers's alleged misconduct."); Mitchell, 600

20   F.Supp.3d at 1032-33 ("[C]omplaint contains no allegations about any actions that policymakers

21   took in connection with their 'approval' of the misconduct that would support an inference that

22   they actually ratified Brook and Emley's alleged misconduct.").[10]

23

24   [10]  See also Anderson v. Cnty. of Fresno, No. 121CV01134ADASAB, 2023 WL 2761168, at *43 (E.D. Cal. Apr. 3,
     2023) ("The Court does not find the vague reference to an inadequate investigation (FAC ¶ 87), to plausibly support

25   a ratification claim against CFMG."), report and recommendation adopted, No. 121CV01134ADASAB, 2023 WL
     4637099 (E.D. Cal. July 20, 2023); Est. of Chivrell v. City of Arcata, 623 F. Supp. 3d 1032, 1041 (N.D. Cal. 2022)

26   ("Plaintiffs' conclusory [ratification] allegations simply track the legal standard and do not provide sufficient detail
     for the Court draw the reasonable inference that Chief Ahearn is liable for the misconduct alleged."); Magdaleno,

27   2022 WL 1843977, at *4 ("There are few—if any—facts alleged in the FAC to support a claim for ratification
     against the County . . . allegations are merely boilerplate language and do not go beyond a mere failure to discipline,
     which is insufficient to allege ratification . . . there are no inferences to be drawn from the facts alleged that the

28   County has ratified the conduct outlined in the FAC [as] [r]atification requires some level of supervisory approval—

The allegations do not rise to the level where other courts have found sufficient to state a Monell claim under the ratification theory. See Robertson v. Bruckert, 568 F. Supp. 3d 1044, 1049–50 (N.D. Cal. 2021) ("FAC alleges the specific pathway through which ratification occurred: and City's and Police Chief Swanger's ongoing assent to the internal affairs investigator's exoneration of officers in multiple cases over the past decade, including Officer Bruckert [and] [w]hile 'mere failure to overrule a subordinate's actions, without more, is insufficient to support' a ratification theory . . . the FAC here alleges that (1) Chief Swanger showed 'affirmative agreement' with Officer Bruckert's actions by expressly ratifying the internal affairs investigation, . . . and (2) the City 'specifically found' that officer's conduct in the various civil rights incidents was appropriate." (quoting Lytle, 382 F.3d at 987)); Quinto-Collins, 2022 WL 18574, at *1 (finding sufficient where alleged that the "Chief intentionally covered up the actions of the individual officers by misrepresenting what happened when the officers arrived at Quinto's house [and] that the Chief knew that Quinto died from asphyxiation caused by an improperly performed prone restraint but announced to the public that there were no signs of asphyxiation on Quinto's body and that the officers had not 'use[d] a knee or other body part to gain leverage or apply pressure to [Quinto's] head, neck or throat.' ").

Accordingly, the Court finds Plaintiff has not state a cognizable Monell claim, and if Plaintiff chooses to file an amended complaint, Plaintiff shall consider the legal standards described above, and specifically as to the properness of naming the individual defendants.

## F. Supervisory Liability Claim

Plaintiff's fifth cause of action is for supervisory liability, personal involvement, brought pursuant to 42 U.S.C. § 1983, against Defendants: (1) Smith; (2) Velasquez; (3) Whitley; and Does 1-50. (Compl. ¶¶ 139-152.)

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

---

either explicit or tacit—that is not properly alleged here."); Perryman v. City of Pittsburg, 545 F. Supp. 3d 796, 803 (N.D. Cal. 2021) ("Even though the FAC includes sufficient facts to plead that defendant was aware of prior instances of alleged police misconduct, plaintiff has failed to plead facts as to *how* policymakers ratified police conduct [and] [while] [t]he FAC states that defendant's 'authorized policymakers ... approved ... prior conduct' and thus 'made a deliberate choice to endorse defendant [officers'] decisions and the basis for those decisions[,]' [t]hese allegations are conclusory and lacking factual support of ratification [and] [t]he FAC does not state what action by the defendant constituted approval.").

other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The statute provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted).  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell, 436 U.S. 658; Rizzo v. Goode, 423 U.S. 362 (1976).  Thus, to state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each Defendant's actions or omissions and a violation of his federal rights.  Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*.  Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr, 652 F.3d at 1205–06; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which

1   the actor knows or reasonably should know would cause others to inflict' constitutional harms."

2   Corales, 567 F.3d at 570.

3       Plaintiff alleges Whitley and Velasquez were present during the time of the alleged

4   beating, restraint, and failure to provide medical care, and failed to take action as supervisors.

5   (Compl. ¶¶ 44, 47, 50, 54, 57, 58, 59, 60, 61, 62, 63, 64.)  Accordingly, the Court finds Plaintiff

6   has stated a potentially cognizable claim against Whitley and Velasquez for supervisory liability.

7   See Taylor, 880 F.2d at 1045; Starr, 652 F.3d at 1205–06; Corales, 567 F.3d at 570.

8       Plaintiff's allegations against Smith are somewhat intertwined with those against the

9   State and CDCR, and touch upon theories of Monell liability.  (Compl. ¶ 142.)  Plaintiff alleges

10  these Defendants, including Smith, have approved the conduct; endorsed the decisions; and have

11  thus shown affirmative agreement with the actions, ratifying them.  (Id.)  Plaintiff then vaguely

12  lumps Smith together with Velasquez and Whitley, in allegations these Defendants, "prior to

13  PLAINTIFF's injuries," knew of and were present for violations of Plaintiff's constitutional

14  rights, mocked Plaintiff and tormented him, and failed to stop the assailants.  (Compl. ¶ 143(a)-

15  (f).)   Plaintiff also conclusory alleges Smith personally participated in the conduct above,

16  purposefully participated in concealing the conduct, and purposefully facilitated Plaintiff's

17  transfer.  (Compl. ¶ 143(g)-(i).)

18      Plaintiff makes vague and alternative conclusory statements that include Smith as well as

19  other Defendants, including that the Defendants directed, approved, encouraged, allowed, and/or

20  ratified decisions, including policies that require, approve, allow, and/or encourage the transfer

21  of inmates to and/or within SCC or another facility, without proper testing, screening, or other

22  appropriate precautions to ease the pain resulting from an injury or stop the pain that resulted

23  from an injury.  (Compl. ¶¶ 144(a)-(c).)  Plaintiff also makes general allegations pertaining to

24  failing to properly investigate, and refusal to properly train.  (Compl. ¶¶ 144(d)-(e).)

25      Given the factual allegations summarized above, (Compl. ¶¶ 44-67), which describe the

26  actions of Whitley and Velasquez as supervisors directly involved in the incident and transfer, as

27  well as the allegations specific to the fifth cause of action (Compl. ¶¶ 139-152), the Court finds

28  Plaintiff has stated a potentially cognizable claim for supervisory liability against Defendants

1  Whitley and Velasquez.  The general factual allegations contain no mention of Defendant Smith.
2  (Compl. ¶¶ 44-67), and therefore, the Court finds the allegations pertaining to Smith that are
3  included in the fifth cause of action (Compl. ¶¶ 139-152), are vague, conclusory, boilerplate, and
4  inconsistent when compared with the general factual allegations of the relevant events, and
5  therefore the Court finds insufficient facts to plausibly support a supervisory liability claim
6  against Defendant Smith.  Plaintiff shall consider the applicable legal standards if he chooses to
7  include Defendant Smith as to this cause of action in an amended complaint.

8          **G.     Claims for Assault and Battery**

9          Plaintiff's sixth cause of action is for battery, and Plaintiff's seventh cause of action is for
10 assault.  (Compl. ¶¶ 153-166, 167-180.)  Plaintiff states the claims are brought pursuant to
11 California Government Code §§ 815.2(a), 820(a), and California common law.  (Id.)  Both
12 causes of actions are brought against Defendants: (1) State; (2) CDCR; (3) McHoul; (4)
13 Rodrigues; (5) Duncan; (6) Contreras; (7) Velasquez; and (8) Does 1-50.  Thus, Defendants do
14 not name Smith, or Whitley, as to these two causes of action

15         Violation of state law is not sufficient to state a claim for relief under § 1983.  To state a
16 claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See
17 Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).  Although the Court may
18 exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable
19 claim for relief under federal law.  See 28 U.S.C. § 1367.  In this instance, the court has found
20 potentially cognizable § 1983 claims above, and thus may appropriately exercise supplemental
21 jurisdiction over the state law claims.

22         "Under California civil law, the elements of assault are: '(1) that defendant intended to
23 cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that
24 plaintiff was put in imminent apprehension of such contact.' "  Allen v. Arias, No.
25 122CV01502ADABAMPC, 2023 WL 6930784, at *3 (E.D. Cal. Oct. 18, 2023) (quoting Brooks
26 v. United States, 29 F.Supp.2d 613, 617 (N.D. Cal. 1998)).  "Under California civil law, the
27 elements of a battery are: '(1) the defendant intentionally did an act that resulted in harmful or
28 offensive contact with the plaintiff's person, (2) the plaintiff did not consent to the contact, and

1    (3) the contact caused injury, damage, loss or harm to the plaintiff.' " Allen, 2023 WL 6930784,

2    at *3 (quoting Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007)).  "An assault is an

3    incipient or inchoate battery; a battery is a consummated assault."  People v. Colantuono, 7 Cal.

4    4th 206, 216, 865 P.2d 704, 710 (1994).  "An assault is a necessary element of battery, and it is

5    impossible to commit battery without assaulting the victim."  Id. (quoting People v. Greer, 30

6    Cal. 2d 589, 597, 184 P.2d 512, 516 (1947)).

7          California law provides that "[e]xcept as otherwise provided by statute: (a) A public

8    entity is not liable for an injury, whether such injury arises out of an act or omission of the public

9    entity or a public employee or any other person."  Cal. Gov't Code § 815(a).  "A public entity is

10   liable for injury proximately caused by an act or omission of an employee of the public entity

11   within the scope of his employment if the act or omission would, apart from this section, have

12   given rise to a cause of action against that employee or his personal representative.  Cal. Gov't

13   Code § 815.2(a).  Therefore, "[u]nder California Government Code section 815.2(a), a public

14   entity may be held vicariously liable for the acts or omissions of its employees . . . [and] 'in

15   contrast to the unavailability of supervisory liability for [ ] federal constitutional violations,

16   Plaintiff may seek to hold [CDCR] ... liable for torts committed [by its employees] in violation of

17   California state law.' "  Dixon v. Oleachea, No. 215CV2372KJMACP, 2018 WL 2088061, at *4

18   (E.D. Cal. May 4, 2018) (quoting Forte v. Hughes, No. 113CV01980LJOSMS, 2014 WL

19   2930834, at *15 (E.D. Cal. June 27, 2014) (alteration added by quoting source)); see also Fisher

20   v. Army Nat'l Guard, No. 120CV01471NONEEPG, 2021 WL 5989798, at *7 (E.D. Cal. Dec. 17,

21   2021) (same).

22         Based on the allegations summarized above, (Compl. ¶¶ 36-62), as well as the allegations

23   specific to the sixth and seventh causes of action (Compl. ¶¶ 153-166, 167-180), the Court finds

24   Plaintiff has stated potentially cognizable claims for battery and assault against Defendants State,

25   CDCR, McHoul, Rodrigues, Duncan, Contreras, and Velasquez.

26         **H.    Negligence Claim**

27         Plaintiff's eighth cause of action is for negligence, brought pursuant to California

28   Government Code §§ 815.2(a), 820(a), and California common law, against all Defendants.

1  (Compl. ¶¶ 181-189.)

2      "Under California law, '[t]he elements of negligence are: (1) defendant's obligation to

3  conform to a certain standard of conduct for the protection of others against unreasonable risks

4  (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection

5  between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss

6  (damages).' " Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax,

7  158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008) (internal quotations omitted)).  "Under the

8  doctrine of *respondeat superior*, an employer may be held vicariously liable for torts committed

9  by an employee within the scope of employment." Mary M. v. City of Los Angeles, 54 Cal.3d

10  202, 208 (1991); accord Robinson v. Solano Cty., 278 F.3d 1007, 1016 (9th Cir. 2002).

11      Based on the allegations summarized above (Compl. ¶¶ 26-67), and contained in the

12  specific cause of action (Compl. ¶¶ 181-189), as well as the Court's findings above as to the

13  other claims, the Court finds Plaintiff has sufficiently stated facts to potentially state a cognizable

14  claim for negligence against all Defendants, except for the Doe Defendants, as discussed below.

15  See Cal. Gov't Code § 815.2(a); Rojas by & through Rojas v. California Dep't of Corr. &

16  Rehabs., No. 2:21-CV-01086-DAD-AC, 2023 WL 7130843, at *2 (E.D. Cal. Oct. 30, 2023)

17  ("After conducting the required screening, the court finds that plaintiff has sufficiently alleged

18  claims of deliberate indifference to plaintiff's safety as well as his serious medical needs in

19  violation of the Eighth and Fourteenth Amendments . . . and supplemental state law claims of

20  negligence.").

21      **I.      Intentional Infliction of Emotion Distress Claim**

22      Plaintiff's ninth cause of action is for intentional infliction of emotion distress, brought

23  pursuant to California Government Code §§ 815.2(a), 820(a), and California common law,

24  against Defendants: (1) State; (2) CDCR; (3) McHoul; (4) Rodrigues; (5) Duncan; (6) Contreras;

25  (7) Velasquez; (8) Whitley; and (9) Does 1-50.  (Compl. ¶¶ 190-197.)  Thus, Plaintiff does not

26  name Defendant Smith as to this cause of action.

27      The elements for a claim of intentional infliction of emotional distress under California

28  law are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of

1   the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and

2   proximate causation of the emotional distress."   Wong v. Tai Jing, 189 Cal.App.4th 1354, 1376

3   (2010) (quoting Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979)); see also Adom v. City of Los

4   Angeles, No. 521CV00711JFWKES, 2023 WL 3958913, at *18 (C.D. Cal. May 17, 2023).

5   Conduct is "outrageous if it is 'so extreme as to exceed all bounds of that usually tolerated in a

6   civilized community.' "   Simo v. Union of NeedleTrades, Industrial & Textile Employees, 322

7   F.3d 602, 622 (9th Cir. 2002) (quoting Saridakis v. United Airlines, 166 F.3d 1272, 1278 (9th

8   Cir. 1999)).  The emotional distress must be "of such a substantial quantity or enduring quality

9   that no reasonable man in a civilized society should be expected to endure it."   Simo, 322 F.3d at

10  622.

11         Based on the allegations summarized above (Compl. ¶¶ 26-67), and contained in the

12  specific cause of action (Compl. ¶¶ 190-197), as well as the Court's findings above as to the

13  other claims, the Court finds Plaintiff has sufficiently stated facts to state a potentially cognizable

14  claim for intentional infliction of emotional distress against Defendants State, CDCR, McHoul,

15  Rodrigues, Duncan, Contreras, Velasquez, and Whitley.  See Cal. Gov't Code § 815.2(a); Rojas,

16  2023 WL 7130843, at *2.

17         **J.     Doe Defendants**

18         Based on review of the allegations specific to the Doe Defendants, the Court finds

19  Plaintiff has not stated sufficient facts as to any Doe Defendants as to potentially state a

20  cognizable claim against any unidentified Doe Defendant.   Plaintiff's factual allegations

21  pertaining to the incident do not plausibly suggest the involvement of any unidentified

22  Defendant.   The lone specific allegation of Doe Defendants at MCSP, states these Doe

23  Defendants forced Plaintiff to wear bloody clothes and forbade him from showering for two (2)

24  days after the injury/his arrival to the facility.  (Compl. ¶ 69.)  The Court does not find such

25  allegation to fit any specific cause of action, and Plaintiff has not attempted to bring a cause of

26  action specifically as to these only separate identified Doe Defendants.

27         Plaintiff may choose to include additional specific allegations as to certain actions taken

28  by Doe Defendants.  However, in either regard, the Plaintiff is informed that "[a]lthough the use

of Doe defendants is acceptable to withstand dismissal at the initial screening stage, service of process for these defendants will not be ordered until such time as plaintiff has: 1) identified them by their real names through discovery; and, 2) filed a motion to amend the complaint to substitute their real names." Rojas, 2023 WL 7130843, at *2 n.12.  Although the ordering of service pertains to plaintiffs proceeding *in forma pauperis*, Plaintiff will similarly be expected to identify such Doe Defendants and move to amend the complaint if Plaintiff chooses to pursue claims against any yet to be identified Defendants.  If Plaintiff fails to identify any Doe defendant during the course of the discovery, any Doe Defendant will be dismissed from this action.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that Plaintiff: (1) states a potentially cognizable excessive force claim under the Eighth Amendment, against Defendants McHoul, Contreras, Rodrigues, and Duncan; (2) states a potentially cognizable failure to intervene claim in violation of the Eighth Amendment, against Defendants McHoul, Contreras, Rodrigues, Duncan, Whitley, and Velasquez; (3) states a potentially cognizable claim for failure to provide reasonable medical care in violation of the Eighth Amendment, against Defendants McHoul, Contreras, Rodrigues, Duncan, Velasquez, and Whitley; (4) fails to state a cognizable Monell liability claim; (5) states a potentially cognizable claim for supervisory liability, personal involvement, under § 1983, against Defendants Velasquez and Whitley, but not against Defendant Smith; (6) states a potentially cognizable claim for battery against Defendants State, CDCR, McHoul, Rodrigues, Duncan, Contreras, and Velasquez; (7) states a potentially cognizable claim for assault against Defendants State, CDCR, McHoul, Rodrigues, Duncan, Contreras, and Velasquez; (8) states a potentially cognizable claim for negligence against all named Defendants; and (9) states a potentially cognizable claim for intentional infliction of emotion distress against Defendants State, CDCR, McHoul, Rodrigues, Duncan, Contreras, Velasquez, and Whitley.[11]

---

[11]  To be clear, "[a] court's determination, upon screening, that a complaint may state cognizable claims does not preclude a defendant from subsequently bringing a motion to dismiss one or more of those claims under Federal Rule of Civil Procedure 12(b)(6)." Barker v. California Dep't of Corr. & Rehab., No. 2:13-CV-1793 KJN P, 2015

1        Thus, in other words, Plaintiff's complaint states potentially cognizable causes of action

2    except for the fourth cause of action for <u>Monell</u> liability, and the fifth cause of action for

3    supervisory liability as to Defendant Smith only.   Further, as stated above, the Court finds

4    Plaintiff has currently not stated a claim against any of the Doe Defendants, and while Plaintiff is

5    not required to omit reference to Doe Defendants in any amended complaint, will be required to

6    move to amend and identify them at a later time and proffer sufficient factual information to tie

7    them to a potentially cognizable cause of action.

8        Plaintiff shall be afforded the opportunity to amend his complaint to cure the above-

9    identified deficiencies to the extent he is able to do so in good faith, or file a notice of intent to

10   proceed on the claims found to be cognizable.   <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir.

11   2000).  If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding

12   on the cognizable claims identified by the Court, he may file a notice informing the Court that he

13   does not intend to amend and he is willing to proceed on the claims found to be cognizable.  The

14   Court will then recommend to the District Judge that this case only proceed on the cognizable

15   claim for the reasons discussed above.

16       If Plaintiff chooses to file an amended complaint, that complaint should be brief, Fed. R.

17   Civ. P. 8(a), but it must state what each named Defendant did that led to the deprivation of

18   Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79.   Although accepted as true, the

19   "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . .

20   ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).   Additionally, Plaintiff may not change the

21   nature of this suit by adding new, unrelated claims in his amended complaint.   <u>George v. Smith</u>,

22   507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

23       Finally, Plaintiff is informed that the Court cannot refer to a prior pleading in order to

24   make Plaintiff's amended complaint complete. Local Rule 220 requires that an amended

25   complaint be complete in itself without reference to any prior pleading.  This requirement exists

26   because, as a general rule, an amended complaint supersedes the original complaint.  <u>See</u>

27   WL 3913546, at *4 (E.D. Cal. June 25, 2015) ("Plaintiff cannot rely solely on the court's screening as a basis for
     overcoming a Rule 12(b)(6) motion.").

28

Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.' ").

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Within **thirty (30) days** from the date of service of this order, Plaintiff shall file either:

    a.     an amended complaint curing the deficiencies identified by the Court in this order, or

    b.     a notice of his intent to proceed only on the cognizable claim identified by the Court in this order; and

2.     Plaintiff is warned that, if he fails to comply with this order, the Court may recommend to the District Judge that this action be dismissed for failure to prosecute and failure to obey a court order.

IT IS SO ORDERED.

Dated:   **November 22, 2023**

UNITED STATES MAGISTRATE JUDGE